**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) Case No. C 14-0780 SC<br>)<br>) ORDER DENYING MOTIONS TO |
| Plaintiff, | ) SUPPRESS, STRIKE, AND FOR<br>) <u>SUMMARY JUDGMENT</u> |
| v. | )<br>) |
| $209,815 IN UNITED STATES<br>CURRENCY, | )<br>)<br>) |
| Defendant. | )<br>) |
| _____ | )<br>)<br>) |
| JULIO FIGUEROA, | )<br>) |
| Claimant. | )<br>) |
| _____ | )<br>) |

## I. <u>INTRODUCTION</u>

Now before the Court are several motions in this civil
forfeiture case.  First, Claimant Julio Figueroa moves to suppress
evidence seized during his interaction with Drug Enforcement Agency
("DEA") Agents at the San Francisco International Airport ("SFO").
ECF No. 18 ("Mot. to Suppress").  Second, the Government moves for
summary judgment, alleging Figueroa, "will be unable to adduce
sufficient evidence to establish any affirmative defense," and,
alternatively, lacks standing to contest the forfeiture.  ECF No.

United States District Court
For the Northern District of California

56 ("SJ Mot.").  Finally, the Government moves to strike Figueroa's claim and for entry of default judgment for Figueroa's failure adequately to respond to special interrogatories.  ECF No. 59 ("Mot. to Strike"), <u>as amended</u> ECF No. 62 ("Am. Mot. to Strike). These motions are fully briefed.[1]  The Court conducted an evidentiary hearing on the motion to suppress and heard oral argument on the motion.  ECF No. 78 ("Hr'g Tr.").  The remaining motions are appropriate for resolution without oral argument under Civil Local Rule 7-1(b).  As explained below the motions are all DENIED.

## II.  <u>BACKGROUND</u>

### A.   <u>Findings of Fact on Motion to Suppress</u>

The Court finds the following facts after the testimony of three witnesses at the evidentiary hearing: DEA Special Agents Leo Bondad and Paul Harris (collectively, "the Agents"), and Figueroa, as well as exhibits received at that hearing and other documents submitted in support of the motion.

This is a civil forfeiture case arising out of $209,815 in United States currency ("the Currency") seized from Claimant's checked luggage at the SFO.  The currency was uncovered during the

---

[1] ECF Nos. 39 ("Suppress Opp'n"), 42 ("Suppress Reply"), 57 ("SJ Opp'n"), 64 ("SJ Reply"), 69 ("Strike Opp'n"), 75 ("Strike Reply"). After the Government filed its motion to strike, Figueroa served supplemental answers to interrogatories and filed notice that he intended to rely on those answers at the hearing on the motion for summary judgment.  <u>See</u> ECF No. 68 ("Notice").  Finding no oral argument necessary, the Court vacated the motion hearing under Civil Local Rule 7-1(b).  Nevertheless, the Court ordered supplemental briefing to address what impact, if any, Figueroa's supplemental answers would have on the then-fully briefed summary judgment motion.  ECF Nos. 76 ("Figueroa Supp. Br."), 80 ("Gov't Supp. Br.").

**United States District Court**
For the Northern District of California

course of a DEA interdiction involving Figueroa, a DEA Confidential
Source, and five DEA Agents: Bondad, Harris, Boston Special Agent
David O'Neill, San Francisco Group Supervisor Aaron Jenkins, and
Task Force Agent Kevin O'Malley.

The investigation began with a tip by a confidential source
that Figueroa had purchased a one-way ticket from New York's John
F. Kennedy International Airport ("JFK") to SFO that night, and
that Figueroa would arrive in SFO the next day with two checked
bags.  Further investigation revealed that the phone number used to
book the ticket was connected in the DEA's Narcotics and Dangerous
Drugs Information System ("NADDIS") to multiple marijuana
trafficking investigations and that Figueroa had a prior arrest for
narcotics possession.  In order to identify Figueroa after leaving
his flight, the Agents reviewed the photo associated with his
California ID Card.

Before Figueroa's flight arrived, the Agents, dressed in
street clothes, began surveillance of the gate.  After Figueroa
deplaned, the Agents surreptitiously followed him and observed him
remove two large suitcases from the baggage carousel and begin
walking toward the elevator.  The Agents took the escalator to the
second floor near where Figueroa would exit the elevator.  One
agent, Bondad, stood to the side of the elevator doors while the
other, Harris, stood approximately 15 feet away from the elevators
across an area of high pedestrian traffic.  Neither Agent's
position blocked Figueroa's most direct path to the terminal exit.

After Figueroa stepped off the elevator, Agent Bondad called
out "Julio?"  Figueroa turned, but did not respond immediately and
continued walking toward the exit.  Agent Bondad repeated "Are you

1   Julio?" and, in the same motion, showed his DEA credentials.

2   Figueroa stopped and responded "No."  Agent Bondad asked if

3   Figueroa had identification, and Figueroa gave Agent Bondad his

4   California ID card.  Seeing that Figueroa's first name was, in

5   fact, Julio, Bondad said "You are Julio.  Why did you lie about

6   your name?" and returned the ID card.  Figueroa responded that he

7   said "no" because he did not recognize Agent Bondad.  Bondad then

8   explained that he was a DEA agent, and told Figueroa he "wasn't in

9   trouble" and was free to leave.  Bondad stated that they were

10  looking for people trafficking "dope" and asked Figueroa if he was

11  carrying any narcotics or contraband with him.  After Figueroa said

12  no, Bondad asked, pointing out Agent Harris (who also displayed his

13  DEA credentials), "would you mind if we search your bags?"

14  Figueroa agreed, and Harris moved closer as Figueroa handed him one

15  of the bags.  Harris moved the bag to another public area of the

16  terminal roughly 10 feet away with less pedestrian traffic.  After

17  kneeling down next to the bags, Harris noticed they were locked and

18  asked Figueroa for the combination to unlock the bags.  Figueroa

19  gave the agents the combination, and upon unlocking the bags and

20  searching the contents, the Agents discovered and seized the

21  Currency, which was bundled in two backpacks inside each of

22  Figueroa's bags.

23      At no time during the encounter was Figueroa advised of his

24  right to decline consent to search.  He was, however, told at the

25  beginning of the encounter that he was free to leave.  The Agents

26  did not advise Figueroa that they would seek a warrant if he

27  declined consent.  It was uncontroverted that Figueroa and the

28  Agents remained calm throughout the encounter, no guns were drawn,

1  Figueroa was never told he was under arrest, and no <u>Miranda</u>
2  warnings were given.

3     **B.   <u>Additional Background</u>**

4        The remaining facts come from the parties' submissions and in
5  some cases remain in dispute.

6        After seizing the Currency, the Agents questioned Figueroa.
7  Both parties agree Figueroa said "we can cut the chit chat now,"
8  and that "I didn't say [the Currency] was mine" but also that "I
9  didn't say that [the Currency] wasn't mine," although they disagree
10 about what Figueroa meant to communicate by these statements.
11 <u>Compare</u> ECF No. 57-1 ("Figueroa Decl.") at ¶ 5, <u>with</u> SJ Mot. at 3,
12 ¶ 9.  Similarly, the parties disagree about the Agents' claim that
13 during the search, Figueroa only asserted ownership over a bundle
14 of a few thousand dollars wrapped in a deposit slip.  <u>Compare</u>
15 Figueroa Decl. at ¶ 6, <u>with</u> SJ Mot. at 3, ¶ 9.

16       Following the seizure of the currency, obtaining the
17 Figueroa's contact information, and explaining the civil forfeiture
18 process, the Figueroa left the airport.  The Agents determined that
19 the Currency consisted of 13,644 bills, 13,554 of which were in
20 denominations of $20 or less.  After placing the Currency in
21 evidence bags and hiding it in an inconspicuous location, a trained
22 narcotics dog, Jackson, altered that the Currency smelled of
23 illegal drugs.

24       Subsequently, the Government filed a complaint for civil
25 forfeiture under 21 U.S.C. Section 983 arguing that the Currency is
26 forfeitable as "proceeds traceable" to the sale of illegal drugs.
27 21 U.S.C. § 881(a)(6).  Figueroa intervened, filing a verified
28 claim and answer required under the statute and asserting "an

United States District Court
For the Northern District of California

ownership and possessory interest in, and the right to exercise

dominion and control over, all the defendant property."  ECF Nos.

11 ("Claim"), 14 ("Answer").

Shortly thereafter, the Government served special

interrogatories under the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules")

"to gather information that bears on the claimant's standing."

Advisory Committee Note to Subd. 6 of Supp. R. G; see also Supp. R.

G(6).  Figueroa objected to the scope of these interrogatories, and

the Government filed a motion to compel, which the Court granted.

ECF No. 48 ("Mot. to Compel Order").  Relying chiefly on the Ninth

Circuit's decision in United States v. $133,420, 672 F.3d 629 (9th

Cir. 2012), the Court found that Figueroa's objections were

unfounded, and his responses were insufficient, and ordered

supplemental answers.

After Figueroa supplemented his answers, the Government moved

to strike Figueroa's verified claim for failure to adequately

respond to interrogatories.  Mot. to Strike at 1; see also Supp. R.

G(8)(c)(i)(A) (authorizing motions to strike for failure to answer

special interrogatories).  Following the Government's motion to

strike, Figueroa once again supplemented his answers, although the

Government argues they are still insufficient.  Figueroa opposes

the motion, reiterating his contention that the interrogatories

exceed the scope permitted by the Supplemental Rules and arguing

that, in any event, they are sufficient.

Finally, the Government has also moved for summary judgment on

the forfeitability of the currency, the sufficiency of Figueroa's

affirmative defenses, and Figueroa's alleged inability to show

1  standing to contest the forfeiture.  Figueroa opposes.

2

3  **III. <u>LEGAL STANDARD</u>**

4      **A.   <u>Motion to Suppress</u>**

5      The Fourth Amendment ordinarily bars the admission of evidence

6  seized as fruit of an illegal search.  <u>Nix v. Williams</u>, 467 U.S.

7  431, 441-42 (1984).  This rule also applies in civil forfeiture

8  proceedings.  <u>See</u> <u>One 1958 Plymouth Sedan v. Pennsylvania</u>, 380 U.S.

9  693, (1965); <u>United States v. $186,416</u>, 590 F.3d 942, 949 (9th Cir.

10  2010) ("The Fourth Amendment exclusionary rule applies to civil

11  forfeiture proceedings.").  Further, Rule G(8)(a) of the

12  Supplemental Rules for Admiralty or Maritime Claims and Asset

13  Forfeiture Actions ("Supplemental Rules") permits a claimant to

14  move to suppress the use of the property seized as evidence

15  provided that party has "standing to contest the lawfulness of the

16  seizure . . . ."

17         1.   <u>Fourth Amendment Seizure</u>

18      The Fourth Amendment "protects two types of expectations, one

19  involving 'searches,' and the other 'seizures.'"  <u>United States v.</u>

20  <u>Jacobsen</u>, 466 U.S. 109, 121 (1984).  A person may be "seized"

21  within the meaning of the Fourth Amendment if an officer uses

22  physical force or a "show of authority" to restrain an individual.

23  <u>Brendlin v. California</u>, 551 U.S. 249, 254 (2007).  When the intent

24  of officers to restrain an individual is ambiguous, we look to

25  whether "in view of all the circumstances surrounding the incident,

26  a reasonable person would have believed he was not free to leave."

27  <u>Id.</u> at 255 (quoting <u>United States v. Mendenhall</u>, 446 U.S. 544, 554

28  (1980)); <u>see also</u> <u>California v. Hodari D.</u>, 499 U.S. 621, 628

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   (1991).

2       The Ninth Circuit has enumerated several factors to guide the

3   analysis of whether an encounter with police constitutes a seizure.

4   Specifically, Courts should look to the number of officers, whether

5   weapons were drawn, the location in which the encounter occurred,

6   the officers' tone or manner, and whether the officers informed the

7   person he could terminate the encounter.  <u>United States v.</u>

8   <u>Washington</u>, 490 F.3d 765, 771-72 (9th Cir. 2007).

9               2.   <u>Consent to Search</u>

10      Similarly, the Fourth Amendment protects individual

11  expectations of privacy from unreasonable searches.  Nonetheless,

12  "[a]n individual may waive his Fourth Amendment rights by giving

13  voluntary and intelligent consent to a warrantless search of

14  person, property, or premises."  <u>United States v. Torres-Sanchez</u>,

15  83 F.3d 1123, 1130 (9th Cir. 1996).  Voluntariness is determined by

16  the totality of the circumstances.  <u>Schneckloth v. Bustamonte</u>, 412

17  U.S. 218, 227 (1973).  In the Ninth Circuit, the Court's

18  voluntariness analysis is driven by five factors, none of which is

19  dispositive.  <u>United States v. Brown</u>, 563 F.3d 410, 415 (9th Cir.

20  2009).  These factors are: (1) whether the individual was in

21  custody; (2) whether officers had their guns drawn; (3) if <u>Miranda</u>

22  warnings were given; (4) if officers informed the individual that

23  they had a right to decline consent; and (5) whether officers told

24  the individual that a search warrant could be obtained.  <u>Id.</u>; <u>see</u>

25  <u>also</u> <u>United States v. Ortiz-Flores</u>, 462 F. App'x 759, 760 (9th Cir.

26  2011).

27  **B.   <u>Motion for Summary Judgment</u>**

28      Entry of summary judgment is proper "if the movant shows that

**United States District Court**
For the Northern District of California

there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a). Summary judgment should be granted if the evidence would
require a directed verdict for the moving party. Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). The moving party
bears the initial burdens of production and persuasion. Nissan
Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099,
1102 (9th Cir. 2000).

C. **Motion to Strike**

The Supplemental Rules permit the Government to file a motion
to strike a verified claim "at any time before trial . . . for
failing to" answer special interrogatories or for lack of standing.
Supp. R. G(8)(c)(i)(A), (B). A motion to strike under the
Supplemental Rules is "'something like a motion to dismiss where we
can look to matters outside the pleadings, and where appropriate,
allow for the possibility of conversion to summary judgment.'"
United States v. $671,160.00, 730 F.3d 1051, 1055 (9th Cir. 2013)
(quoting United States v. $6,976,934.65 Plus Interest, 478 F. Supp.
2d 30, 38 (D.D.C. 2007)) (internal alterations omitted).

III. **DISCUSSION**

A. **Motion to Suppress**

In support of his motion to suppress, Figueroa makes two
arguments. First, he contends that his encounter with the Agents
constituted an illegal seizure within the meaning of the Fourth
Amendment, thus rendering the subsequent search unlawful.
Alternatively, Figueroa argues that even if he was not seized, his
consent to search was involuntary. Accordingly, Figueroa asks that

**United States District Court**
For the Northern District of California

1   the currency be suppressed.  Figueroa asserts, and the Government

2   does not contest, that he has standing to bring the motion to

3   suppress.

4          1.  <u>Seizure</u>

5          Figueroa contends that he was seized within the meaning of the

6   Fourth Amendment because the Agents lacked reasonable suspicion to

7   detain him, and Agent Bondad's actions constituted a "show of

8   official authority" which a reasonable person would not feel free

9   to refuse.  Mot. at 8.  Specifically, Figueroa states that Bondad

10  repeatedly calling out his name and displaying his badge would make

11  "clear to any reasonable person in Figueroa's shoes[] not only that

12  he was not free to leave, but that he, specifically, was the

13  subject of an investigation."  <u>Id.</u> at 9.  The Government does not

14  contend that the Agents had reasonable suspicion to detain

15  Figueroa, instead arguing that because the encounter was

16  consensual, Figueroa was never seized within the meaning of the

17  Fourth Amendment.

18         The Government is right.  No unlawful seizure took place in

19  this case.  Generally speaking, law enforcement officers are free

20  approach individuals in a public place and ask them questions.  <u>See</u>

21  <u>Florida v. Royer</u>, 460 U.S. 491, 497 (1983); <u>United States v. Woods</u>,

22  720 F.2d 1022, 1026 (9th Cir. 1983).  "The fact that the officer

23  identifies himself as a police officer does not convert the

24  encounter into a seizure requiring some level of objective

25  justification."  <u>Woods</u>, 720 F.2d at 1026.  Instead, the key

26  question is whether, "in view of all the circumstances surrounding

27  the incident, a reasonable person would have believed that he was

28  not free to leave."  <u>Mendenhall</u>, 446 U.S. at 554.  Weighing the

**United States District Court**
For the Northern District of California

1    totality of the circumstances, the Court concludes that a

2    reasonable person would have believed he was free to leave.

3         Numerous facts weigh in favor of finding that a reasonable

4    person would feel free to leave.  First, and most compellingly,

5    Figueroa was specifically told by Agent Bondad that he was not in

6    trouble and was free to leave.  The conversation between Figueroa

7    and the agents happened in public and remained calm throughout.

8    The Agents were dressed in plain clothes and, although they were

9    armed, their weapons were never displayed.  The Agents never

10   touched Figueroa or otherwise blocked his path to the exit, and

11   they remained a reasonable distance away at all times.  Despite the

12   characterization in Figueroa's briefing that he was "ordered" to

13   produce identification, the testimony at the evidentiary hearing

14   supports the Court's finding that Agent Bondad simply asked if

15   Figueroa had identification -- a request to which Figueroa

16   responded by handing over his ID card.  After confirming his

17   identity, Bondad immediately returned Figueroa's identification to

18   him.

19        Figueroa argues that two facts constitute a show of authority

20   sufficient to render this encounter a seizure.  First, before

21   displaying his badge, Agent Bondad called out "Julio," to which

22   Figueroa turned, but did not respond and continued walking.  Only

23   after repeating his statement and simultaneously displaying his

24   badge did Figueroa stop and respond to Bondad.  Second, in calling

25   out to Figueroa, Bondad used Figueroa's first name, indicating

26   prior knowledge of his identity and communicating at least the

27   inference that Figueroa was the target of a criminal investigation.

28   Figueroa argues that as a result, (1) the Agents ignored his

11

intention to decline the encounter and leave the airport, and (2)
by using his name, the Agents communicated that Figueroa,
"specifically, was the subject of an investigation."  Unfortunately
for Figueroa, neither the cases he cites nor the weight of the
relevant facts are in his favor.

First, the fact that Figueroa did not respond to Agent
Bondad's initial attempt to get his attention does not render this
encounter a seizure.  Figueroa's response to Bondad's initial
"Julio?", turning, but continuing to walk toward the exit, did not
constitute an "unequivocal unwillingness to engage in further
conversation . . . ." United States v. Hernandez, 27 F.3d 1403,
1406 (9th Cir. 1994) (quoting United States v. Wilson, 953 F.2d
116, 123 (4th Cir. 1991)).  Instead, under these circumstances, the
Court is persuaded that repeating "[a]re you Julio?" was
reasonable.  The encounter happened in a public place, no physical
force was used, the Agents did not block Figueroa's exit or show
their weapons, and remained calm and conversational throughout.
Moreover, at the time Figueroa allegedly intended to decline the
encounter -- after Agent Bondad initially said "Julio?" -- Bondad
had not yet displayed his DEA credentials.  As a result, Figueroa
could not have known he was speaking to law enforcement, let alone
unequivocally declined to speak with them.

Furthermore, the fact that Bondad displayed his identification
and used Figueroa's name (rather than some other generic greeting)
does not alter this conclusion.  First, "[t]he fact that the
officer identifies himself as a police officer does not convert the
encounter into a seizure requiring some level of objective
justification." Woods, 720 F.2d at 1026.  Furthermore, as at least

1 one other court has found, using an individual's name in initiating

2 a consensual encounter does not render that encounter a seizure.

3 See United States v. Sealey, 30 F.3d 7, 10 (1st Cir. 1994) (finding

4 a defendant was not seized when an officer approached him and

5 called out "Hey Stephen, what's up?").

6     In short the Court is persuaded that under these circumstances

7 a reasonable person would have felt free to leave.  Hence, this

8 encounter was not a seizure.

9         2.   Consent

10     Having found that Figueroa was not seized within the meaning

11 of the Fourth Amendment, the only remaining issue on the motion to

12 suppress is whether Figueroa voluntarily consented to the search of

13 his luggage.  As discussed earlier, in the Ninth Circuit, the

14 Court's voluntariness analysis is driven by five factors, none of

15 which is dispositive.  United States v. Brown, 563 F.3d 410, 415

16 (9th Cir. 2009).  These factors are: (1) whether the individual was

17 in custody; (2) whether officers had their guns drawn; (3) if

18 Miranda warnings were given; (4) if officers informed the

19 individual that they had a right to decline consent; and (5)

20 whether officers told the individual that a search warrant could be

21 obtained.  Id.; see also United States v. Ortiz-Flores, 462 F.

22 App'x 759, 760 (9th Cir. 2011).

23     Here, these factors favors weigh in favor of voluntariness.

24 Having earlier found that Figueroa was not seized, he cannot be

25 deemed to have been in custody.  Because Figueroa was not in

26 custody, "Miranda warnings [are] inapposite." Brown, 563 F.3d at

27 416 (quoting United States v. Patayan Soriano, 361 F.3d 494, 501

28 (9th Cir. 2004)).  Furthermore, it is undisputed that the officers

1  were dressed in plain clothes, and their weapons were concealed

2  throughout the encounter.  While the Agents did not inform Figueroa

3  of his right to decline consent to search, "this factor is not an

4  absolute requirement for a finding of voluntariness," and in any

5  event he was earlier advised that he was not in trouble and was

6  free to leave.  Id. (citing Schneckloth, 412 U.S. 248-49).

7  Finally, while testimony differed on whether the Agents told

8  Figueroa that a search warrant could be obtained if he declined

9  consent, the Court finds Bondad and Harris' testimony on that point

10  more convincing and concludes that the Agents never advised

11  Figueroa that they would obtain a search warrant if he declined

12  consent.

13      At the hearing on the motion to suppress, Claimant's counsel

14  made much of the fact that the Agents had a consent form that could

15  have been used to obtain a written waiver of Figueroa's Fourth

16  Amendment rights, but nonetheless chose not to use it.  He also

17  extensively questioned the Agents regarding various DEA policies

18  and guidelines, insinuating that these guidelines also encourage

19  officers to obtain a signed consent form under circumstances like

20  this.  While this may be true, the Court finds it is nonetheless

21  inapposite.  The fact that officers could have obtained a more

22  unassailable type of consent to search does not change the Court's

23  conclusion that the consent they actually did obtain was voluntary.

24      As a result, the Court finds that Figueroa voluntarily

25  consented to the search of his luggage.  Having found that Figueroa

26  was also not seized within the meaning of the Fourth Amendment, the

27  motion to suppress is DENIED.

28  ///

**United States District Court**
For the Northern District of California

1     **B.**   **<u>Motion for Summary Judgment and Alternative Motion to</u>**

2     **<u>Strike</u>**

3     Next, the Government moves for summary judgment on three

4 issues.  First, the Government argues that the Court should grant

5 summary judgment on the issue of the forfeitability of the currency

6 at issue.  Second, the Government contends that summary judgment on

7 the remaining issues is appropriate because Figueroa will not be

8 able to provide sufficient evidence to establish any of his

9 affirmative defenses.  Third, and in the alternative, the

10 Government moves to strike Figueroa's claim on the grounds that he

11 has failed to establish standing to contest the forfeiture.

12 Because standing is a "threshold matter," the Court will address

13 the alternative motion based on standing first.  <u>See</u> <u>United States</u>

14 <u>v. 5208 Los Franciscos Way</u>, 385 F.3d 1187, 1191 (9th Cir. 2004).

15     The Ninth Circuit has yet to identify the burden on the issue

16 of a forfeiture claimant's standing at the summary judgment stage.

17 <u>$133,420</u>, 672 F.3d at 638.  Nevertheless, the Ninth Circuit has

18 articulated some applicable general principles.  First, the

19 claimant may not rely on mere allegations, but must instead "'set

20 forth' by affidavit or other evidence 'specific facts . . . '"

21 demonstrating his standing.  <u>Id.</u>  Second, the Court must ask itself

22 whether "'a fair minded jury' could find that the claimant has

23 standing on the evidence presented."  <u>Id.</u> (quoting <u>Liberty Lobby</u>,

24 477 U.S. at 252).  In doing so, the existence of minimal evidence

25 is insufficient -- instead there must be sufficient evidence for

26 the jury to find for plaintiff on the issue.  <u>Id.</u>

27     The Government urges the Court to fill in any blanks left by

28 the Ninth Circuit in this area with cases and principles derived

**United States District Court**
For the Northern District of California

1    from Federal Rule of Civil Procedure 12(b)(1), which governs

2    motions to dismiss for lack of subject-matter jurisdiction.  This

3    appears to be a novel argument, but because the general principles

4    articulated by the Ninth Circuit in $133,420 resolve the issue in

5    Figueroa's favor, there is no need to decide to what extent

6    principles derived from the Rule 12(b)(1) context are applicable

7    here.

8        First, as the Ninth Circuit has suggested, "[t]he fact that

9    the property was seized from the claimant's possession, for

10   example, may be sufficient evidence, when coupled with a claim of

11   ownership, to establish standing at the summary judgment stage."

12   Id. at 639 (citing United States v. $148,840.00, 521 F.3d 1268,

13   1277 (10th Cir. 2008)); see also United States v. $167,070, No.

14   3:13-CV-00324-LRH-VPC, 2014 WL 3697252, at *4 (D. Nev. July 23,

15   2014).  That is precisely the circumstance at issue here.

16   Figueroa's verified claim asserts and ownership interest in the

17   Currency, and the Currency was undisputedly seized directly from

18   his possession.  Nevertheless, even if this is not enough to

19   establish standing, Figueroa has responded to the Government's

20   motion with an affidavit explaining that the Currency is his life

21   savings, accumulated partially through legitimate employment as a

22   freelance graphic designer and youth advocate on immigration

23   issues, and partially through a cash inheritance from his

24   grandmother.  ECF No. 57-1 ("Figueroa Decl.") ¶¶ 2-3.

25   Additionally, Figueroa explained that he was travelling with the

26   Currency because he planned to invest it in a restaurant during a

27   trip to New York, however, for unexplained reasons the deal did not

28   come about and he returned home to San Francisco with the money.

16

**United States District Court**
For the Northern District of California

1   Id. at ¶ 4.

2        The Government objects to this declaration, arguing that it is

3   simply a "conclusory, self-serving affidavit, lacking detailed

4   facts and any evidence," and therefore it is insufficient to create

5   a genuine issue of material fact.  See $133,420, 672 F.3d at 638

6   (quoting FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171

7   (9th Cir. 1997)).  The Court disagrees.  This case does not involve

8   the "[u]nexplained naked possession of a cash hoard," United States

9   v. $42,500, 283 F.3d 977, 983 (9th Cir. 2002) (quoting United

10  States v. $321,470, 874 F.2d 298, 304 (5th Cir. 1989)), an

11  equivocal statement that the claimant has an "ownership and/or a

12  possessory interest" in the currency, $133,420, 672 F.3d at 640, or

13  the use of the Fifth Amendment as a sword and shield.  Id. at 640-

14  41.  On the contrary, the declaration reiterates Figueroa's

15  ownership and possessory interest in the Currency, and explains

16  both the circumstances by which he acquired the Currency and why he

17  possessed it when it was seized.  This, coupled with the fact that

18  the Currency was seized directly from Figueroa's possession is

19  enough to persuade the Court that, at this point, the record

20  supports the conclusion that Figueroa has standing to contest the

21  forfeiture.

22       Nevertheless, the Government contests Figueroa's declaration

23  further, arguing that the Court should disregard it because

24  Figueroa has resisted the Government's discovery requests and

25  because his declaration contradicts statements he allegedly made to

26  the Agents following the search of his luggage.  The Government's

27  first point is raised in the parallel motion to strike for failure

28  to adequately respond to special interrogatories, and the Court

17

**United States District Court**
For the Northern District of California

1  will address it there.  The second point, that the declaration

2  contradicts the Agent's version of events after the currency was

3  seized, is irrelevant.  A forfeiture claimant need not show that

4  the evidence of his standing is undisputed or prove standing by a

5  preponderance of the evidence at the summary judgment stage.

6  Instead, the claimant must, as Figueroa has here, set forth

7  specific facts, "which for the purposes of the summary judgment

8  motion will be taken as true" to show that a reasonable jury could

9  find the claimant has standing.  $133,420, 672 F.3d at 638

10  (emphasis added).  Because Figueroa has done that, the Government's

11  motion is DENIED as to standing.

12      The remainder of the Government's motion seeks summary

13  judgment on the question of whether the Currency is subject to

14  forfeiture and on Figueroa's affirmative defenses.  Under 21 U.S.C.

15  Section 881(a)(6), seized currency is subject to forfeiture if (1)

16  it is intended to be furnished in exchange for controlled

17  substances, (2) it is proceeds "traceable" to such exchanges, or

18  (3) it is otherwise used or meant to be used to facilitate

19  violation of the Controlled Substances Act.  Here, the Government

20  argues the currency is either the proceeds of illegal drug sales or

21  is traceable to such sales.  As a result, the Government must show

22  a connection between the Currency and illegal drug trafficking by a

23  preponderance of the evidence.  18 U.S.C. § 983(c)(1); United

24  States v. $493,850, 518 F.3d 1159, 1170 (9th Cir. 2008).

25      The problem with this motion is that it is premature.  Because

26  the Government filed this and its other motions so early in the

27  case, there has not been a case management conference.  As a

28  result, Figueroa is currently barred from taking any discovery.

**United States District Court**
For the Northern District of California

See Civ. L.R. 16-7.  "Generally where a party has had no previous opportunity to develop evidence, and the evidence is crucial to material issues in the case, discovery should be allowed before the trial court rules on a motion for summary judgment."  Program Eng'g, Inc. v. Triangle Pubs., Inc., 634 F.2d 1188, 1193 (9th Cir. 1980).  Here, part of the basis for forfeitability is the alert of the drug dog, Jackson.  As other cases have recognized, the records of a drug-sniffing dog and the testimony of the dog's handler are relevant to the reliability of the dog's alert.  See, e.g., Florida v. Harris, 133 S. Ct. 1050, 1057-58 (2013); United States v. $10,700, 258 F.3d 215, 230 & n.10 (3d Cir. 2001).  Similarly, Figueroa disputes large portions of the Agents' description of events.  At a minimum, he suggests he should be permitted to obtain discovery regarding the Agents and to depose them prior to the Court addressing summary judgment.  ECF No. 57-2 ("Burch 56(d) Decl.") at ¶¶ 4-5.  The Government notes in its reply that it would not object to the Court allowing discovery into these matters. Reply at 3.

As a result, the Court finds that the Government's summary judgment motion is premature, and that the motion should be DENIED WITHOUT PREJUDICE.  Fed. R. Civ. P. 56(d)(1).  The Court will instead schedule a case management conference at which the parties and the Court can determine how best to proceed with discovery.

**C.   Motion to Strike**

Finally, the Government has moved to strike Figueroa's claim on the grounds that he has failed to provide adequate answers to the Government's special interrogatories.  In the context of civil forfeiture proceedings, Supplemental Rule G(6) permits the

**United States District Court**
For the Northern District of California

government to serve special interrogatories that "broadly allow the
government to collect information regarding the claimant's
relationship to the defendant property . . ." <u>United States v.
$133,420</u>, 672 F.3d 629, 642 (9th Cir. 2012).  The Court may strike
a verified claim for failure to respond to special interrogatories.
Supp. R. G(8)(c)(i)(A).

The Court previously granted a motion to compel Figueroa to
respond to the Government's special interrogatories.  ECF No. 49
("Order").  In that order, the Court rejected Figueroa's argument
that because his verified claim and limited responses to the
Government's special interrogatories were sufficient to establish
his standing to contest forfeiture, no further responses could be
compelled.  Subsequently Figueroa twice supplemented his answers.
ECF No. 82-1 ("Chart").

The Government's chief complaints at this stage are threefold.
First, Figueroa continues to assert numerous boilerplate objections
despite the Court's order to the contrary.  Second, Figueroa's
second supplemental answers were untimely and unauthorized.  Third,
his answers to most of the special interrogatories are
insufficient.  Figueroa disagrees with these arguments, instead
arguing that the Court should reconsider its prior order because
the Court misinterpreted the Supplemental Rules and the Ninth
Circuit's decision in <u>$133,420</u> in granting the Government's motion
to compel.  Figueroa also asserts that his answers are sufficient
to satisfy both the requirements of the Supplemental Rules and the
Court's prior order, and that striking his claim would be an
inappropriately severe sanction at this stage.

As a preliminary matter, the Court declines to reconsider the

**United States District Court**
For the Northern District of California

order on the motion to compel. Figueroa's chief objection to the

order granting the motion to compel is that because Figueroa is

asserting an ownership interest in the Currency, his standing to

contest the forfeiture is clear. As the Court found above,

Figueroa has provided sufficient detail to show his standing at

this time. That said the Government may, on the basis of

subsequent discovery, seek to rebut that evidence. See United

States v. $574,840, 719 F.3d 648, 652-53 (7th Cir. 2013). By the

Court's reading of the Supplemental Rules and applicable precedent,

that does not relieve Figueroa of the obligation to respond to

special interrogatories. See $133,420, 672 F.3d at 642 (rejecting

the argument that "because a claimant can establish standing merely

by asserting an interest in the property, and because the advisory

committee's note to Supplemental Rule G(6) limits the

interrogatories to questions 'bearing on a claimant's standing' it

follows that Rule G(6) allows only questions regarding the identity

of the claimant and the type of legal interest asserted."). 

Figueroa clearly disagrees, but disagreement with the Court's

orders is not a basis for reconsideration. See Civ. L.R. 7-9(b)-

(c).

     As to the Government's first point, the Court agrees. The

Court has little patience for the unjustified (but puzzlingly

pervasive) practice of asserting numerous, often frivolous

boilerplate objections with any discovery response. See United

States v. $333,806.93, No. CV 05-2556 DOC (ANx), 2010 WL 3733932,

at *2 (C.D. Cal. Aug. 30, 2010) ("In addition to being

substantively incorrect, [Claimant's] stated objections to

the . . . special interrogatories constitute cursory

boilerplate."); see also Sec. Nat'l Bank v. Abbott Labs., 299
F.R.D. 595, 596 (N.D. Iowa 2014) ("Today's 'litigators' . . . often
object using boilerplate language containing every objection
imaginable, despite the fact that courts have resoundingly
disapproved of such boilerplate objections.") (footnote omitted).
This is further underscored by the fact that the Court already
overruled these objections in granting the Government's motion to
compel. See $333,806.93, at *2 ("The insufficiency of boilerplate
objections seems especially striking . . . given the Court's
previous order specifically instructing [Claimant] to respond to
the special interrogatories . . . .").

Despite that, Figueroa is correct in arguing that he has fully
responded to some of the Government's interrogatories.
Specifically, the Court finds that Figueroa has adequately answered
interrogatories number 1, 2, and 5-9.  This is a close question on
some.  For example, interrogatory number 2 seeks a description of
the circumstances under which Figueroa acquired the Currency, and
if acquired at different times, the circumstances under which each
interest was acquired.  While Figueroa has simply stated he
acquired roughly half the Currency from a cash inheritance and the
remainder from his employment, the Court finds this satisfactorily
explains the "circumstances" by which he acquired the Currency.
Explaining the "circumstances" of acquiring the Currency does not
require, as it seems the Government believes, Figueroa to go
through each specific instance during which he performed some
freelance graphic design or consulting work and explain the project
and identify the amount of money he received.  Instead, the Court
reads this request and others like it, for example number 5, as

22

**United States District Court**
For the Northern District of California

1  only requiring a general description of the circumstances.

2       Similarly, in his response to interrogatory number 6, Figueroa

3  states that he obtained a small amount of the Currency in paychecks

4  from a prior employer, Instituto Familiar de la Raza, and provided

5  two paystubs.  ECF No. 68-1 ("Supplemental Answers") at 16.  The

6  Government's issue with Figueroa's response is somewhat unclear.

7  The Government states Figueroa's answer is "incomplete" because

8  Figueroa said "he obtained 'most of the defendant property in cash'

9  and 'some small portion' in checks from Instituto Familiar,"

10 without offering more detail about the exact problem with this

11 answer.  Strike Reply at 7 (quoting ECF No. 68-1 ("Supplemental

12 Answers") at 18).  As best as the Court can discern, the

13 Government's issue is that Figueroa responded without

14 "identify[ing] the payor and payee of the check(s), the amount of

15 the check(s), and the approximate date of the check(s)," as

16 requested.  Supplemental Answers at 16.  However there are several

17 problems with the Government's view.  First, Figueroa has

18 identified the payor (Instituto Familiar), the payee (himself), and

19 the approximate dates during which he received the relevant checks

20 (2007-2009).  Second, even if Figueroa has not listed every check

21 he received from Instituto Familiar or given the exact amount of

22 those checks, "[o]n motion or on its own," the Court must weigh the

23 burden of proposed discovery against its likely benefit.  Fed. R.

24 Civ. P. 26(b)(2)(C)(iii).  Figueroa claims that the Currency is his

25 life savings and that any checks form only a small portion of the

26 Currency.  Furthermore, Figueroa has already provided information

27 about the payor, payee, and approximate dates of any relevant

28 checks.  Given those facts, the Court finds that the burden of

23

providing additional detail regarding checks that are in some cases
as much as seven years old would be unduly burdensome in light of
the relatively small probative value of such information.
Accordingly the Court finds this response is also sufficient.  If
the Government can articulate some reason why the benefits of this
information outweigh the burden then it may simply seek this
information in the ordinary course of discovery.

At the same time, the Government is right that Figueroa's
answers to some of the special interrogatories remain deficient in
several respects.  Specifically the Court finds Figueroa's answers
to interrogatories numbers 3, 4, and 10 are insufficient.  Figueroa
argues interrogatories 3 and 10 need not be answered with anything
but objections because they either (1) seek production of
documents, and (2) exceed the scope of the Supplemental Rules
because they seek information that does not bear on the claimant's
standing.  Not so.  First, request number 3 asks Figueroa to
identify any records or documents he has with specificity.
Supplemental Answers at 6.  While Figueroa argues that
"[i]dentifying 'any' documents that you have 'with specificity' is
asking for the production of documents."  Opp'n at 17.  This is
obviously mistaken, and the Court has previously rejected any
suggestion that the Government's interrogatories are actually
requests for production.  See Order at 5.  Similarly, interrogatory
number 10 asks Figueroa to identify people with information
relating to his claims of ownership and possession of the Currency.
While Figueroa contends this has no bearing on his standing, that
is not the test.  Instead, the Supplemental Rules permit
interrogatories to probe the claimant's "relationship to the

**United States District Court**
For the Northern District of California

1   defendant property . . . ."  Supp. R. G(6).  As the Ninth Circuit

2   found, while endorsing a special interrogatory seeking, among other

3   things, "the names, address and telephone numbers of the persons

4   from whom the currency was obtained," and "witnesses, including the

5   names addresses, and telephone numbers of such witnesses, to any of

6   the transactions by which the defendant currency was obtained,"

7   such questions are "well within the scope of the rule."  $133,420,

8   672 F.3d at 636 & n.5.  Finally, the Court finds Figueroa's

9   response to interrogatory number 4 is insufficiently detailed.

10  Interrogatory number 4 seeks a list of sources of the Currency,

11  including a list of persons from which the Currency was obtained

12  and dates on which that occurred.  While Figueroa has stated that

13  he works as a "freelance consult[ant] and graphic design[er]," with

14  "Art-based organizations," his response to interrogatory number 4

15  fails to identify those organizations or any other clients he may

16  have had as a freelance graphic designer and how much, if known, he

17  obtained from each source.  Supplemental Answers at 12.  Without

18  more detail, the Court cannot conclude that Figueroa has adequately

19  answered these interrogatories.

20      Nevertheless, the Court is not persuaded that the Government's

21  suggested remedy -- striking Figueroa's claim as a sanction for

22  failure to comply with the Supplemental Rules -- is appropriate at

23  this time.  As the advisory committee notes to the Supplemental

24  Rules point out, "[n]ot every failure to respond to subdivision (6)

25  interrogatories warrants an order striking the claim."

26  Furthermore, this is not a case in which the claimant has

27  completely failed to respond to special interrogatories, see United

28  States v. $24,700, No. 2:10-cv-03118-GEB-DAD, 2012 WL 458412, at

1   *2-3 (E.D. Cal. Feb. 10, 2012), missed the deadline to respond by

2   an unreasonable period of time, see United States v. $67,900, No.

3   2:13-cv-01173 JAM-AC, 2013 WL 6440211, at *2 (E.D. Cal. Dec. 9,

4   2013), or failed to respond after seemingly abandoning the

5   litigation.  See United States v. $10,000, No. 1:11-cv-01845-SKO,

6   2013 WL 5314890, at *4-5 (E.D. Cal. Sept. 20, 2013).  On the

7   contrary, Figueroa's answers, while inadequate in places, evince

8   candor and effort.

9       Rather than strike Figueroa's claim at this point, the Court

10   DENIES the motion to strike without prejudice and ORDERS Figueroa

11   to serve supplemental answers to special interrogatories numbers 3,

12   4, and 10 within fourteen (14) days from the signature date of this

13   order.  If Figueroa's answers remain insufficient after

14   supplementation, the Government may re-file its motion to strike.

15

16   **V.**    **CONCLUSION**

17       For the reasons set forth above, the Court ORDERS as follows:

18        • Figueroa's motion to suppress is DENIED.

19        • The Government's Motion for Summary Judgment is DENIED

20          WITHOUT PREJUDICE.  The Government may re-file a motion

21          for summary judgment after the parties have had an

22          opportunity to conduct more discovery.  See Fed. R. Civ.

23          P. 56(d).

24        • The Government's motion to strike for failure to provide

25          adequate responses to special interrogatories is DENIED

26          WITHOUT PREJUDICE.

27        • Figueroa is ORDERED to file supplemental answers to

28          special interrogatories number 3, 4, and 10 within

**United States District Court**
For the Northern District of California

fourteen (14) days. If he does not do so, or his answers remain insufficient after supplementation, the Government may re-file its motion to strike.

IT IS SO ORDERED.

Dated: December 8, 2014



UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California