IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$209,815 IN UNITED STATES CURRENCY,<br><br>Defendant. | Case No. 14-cv-00780-MMC<br><br>**ORDER DENYING CLAIMANT'S MOTION FOR RECONSIDERATION; DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. Nos. 148, 156 |

By order filed October 14, 2015, the Honorable Samuel Conti denied a motion for summary judgment filed by claimant Julio Figueroa ("Figueroa") and a motion for summary judgment filed by the government.[1]  Now before the Court are two motions seeking reconsideration of said order: (1) Figueroa's motion for reconsideration, filed November 23, 2015; and (2) the government's motion for reconsideration, filed December 8, 2015.  Both motions for reconsideration have been fully briefed.[2]  Having read and considered the parties' respective written submissions, the Court rules as follows.

**BACKGROUND**

In its Complaint for Forfeiture, the government alleges that it seized "$209,815 in United States Currency from [ ] Figueroa during a consensual search after he disembarked on September 27, 2013 at San Francisco International Airport from [a flight]

---

[1] The above-titled action subsequently was reassigned to the undersigned.

[2] Figueroa submitted in double-sided format a chambers copy of the "Declaration of Counsel and Exhibit," filed January 8, 2016.  As to all documents filed hereafter in the instant case, Figueroa is hereby DIRECTED to submit chambers copies in single-sided format.  See Standing Orders For Civil Cases Assigned to The Honorable Maxine M. Chesney ¶ 2; Civil L.R. 3-4 (setting forth requirements for "papers presented for filing"); Civil L.R. 3-4(c)(2) (providing "text must appear on one side only").

which had originated at John F. Kennedy International Airport in New York." (See Compl. ¶ 1.) More specifically, the government alleges: (1) two Special Agents with the Drug Enforcement Administration ("DEA"), acting on "information from a confidential source," initiated "surveillance" of Figueroa upon his arrival in San Francisco (see Compl. ¶ 9); (2) after Figueroa obtained two suitcases from a baggage carousel, the Special Agents "approached" Figueroa and "identified themselves as agents with the [DEA]"; Figueroa "agreed" to speak to them and "agreed" they could search his suitcases (see Compl. ¶ 11); (3) one Special Agent found "a large amount of United States Currency" in the suitcases, later determined to total $209,815, (see Compl. ¶ 12), and the other Special Agent "advised Figueroa that the currency was going to be seized for "further investigation" (see Compl. ¶ 14); (4) "Figueroa left the airport without incident" (see Compl. ¶ 15); and (5) shortly thereafter, the currency was placed in "four, self-sealing, DEA evidence bags," the bags were put "inside a fire extinguisher box, a "certified narcotics detection canine" searched the area in which the fire extinguisher box was located and "alerted by scratching and pointing at the fire extinguisher box," which conduct indicated to the canine's trainer that "the odor of illegal drugs was emanating from the United States Currency inside the evidence bag[s]" (see Compl. ¶ 16). According to the government, the subject currency is "subject to forfeiture" as it constitutes the proceeds of or is traceable to an exchange for a controlled substance. (See Compl. ¶ 1; see also Re-Filed Mot. of the United States for Summ. J., filed July 3, 2014, at 11:20-22).

On March 28, 2014, Figueroa filed a Verified Claim, in which he claims ownership of the subject currency; that same date, Figueroa filed an Answer, in which he denies the currency is subject to forfeiture. In a later-filed declaration, Figueroa states that "approximately half of the [seized] currency was derived from [his] legitimate employment income and half was from [an] inheritance from [his] deceased grandmother" (see Figueroa Decl., filed July 17, 2014, ¶ 2), and that he had taken the currency to New York "to potentially invest it in a new restaurant with a close friend of [his] . . . [but] the new

1    venture did not come to fruition and so [his] property was not needed for that purpose at
2    the time and [he] returned home with it" (see id. ¶ 4).
3        On April 15, 2014, Figueroa filed a motion to suppress, arguing therein he had
4    been unlawfully detained at the airport and had not consented to the search of his
5    suitcases. On August 1, 2014, Judge Conti conducted an evidentiary hearing at which
6    the two Special Agents and Figueroa testified. By order filed December 8, 2014, Judge
7    Conti denied the motion to suppress, finding Figueroa had not been subjected to a
8    "seizure," for the reason that "a reasonable person would have felt free to leave" (see
9    Order, filed December 8, 2014, at 13:6-8), and, further that "Figueroa voluntarily
10   consented to the search of his luggage" (see id. at 14:24-25).
11       On July 3, 2014, the government filed a motion for summary judgment, asserting it
12   was entitled to judgment on the issue of whether the seized currency is subject to
13   forfeiture and on each of Figueroa's affirmative defenses. In the alternative, the
14   government contended Figueroa lacked evidence to establish standing. By order filed
15   December 8, 2014, Judge Conti denied the motion, finding, as to standing, that Figueroa
16   had submitted sufficient evidence to support his standing, and, as to the remaining
17   matters, that the motion was premature as it was filed prior to the inception of discovery.
18       On May 2, 2015, after discovery had begun, Figueroa filed a "Motion for Order and
19   Judgment Pursuant to 19 U.S.C. § 1615," in which he asserted the government could not
20   establish it had probable cause to initiate the above-titled action and, consequently, that
21   he was entitled to summary judgment. On May 29, 2015, the government filed a "Cross
22   Motion," in which it contended it was entitled to summary judgment on the issue of
23   probable cause. By order filed October 14, 2015, Judge Conti denied both motions,
24   finding that, although "a preponderance of the evidence supports a finding that there was
25   probable cause for the seizure if the drug dog evidence can be used" (see Order, filed
26   October 14, 2015, at 27:5-7), a triable issue remained as to the reliability of the dog's
27   alert. Specifically, Judge Conti found the issue of whether the dog, Jackson, "was or [ ]
28   was not signaled" was "a matter properly decided by a trier of fact at trial." (See id. at

26:19 - 27:1.)  In addition, Judge Conti found Jackson's "training records" were "required for a proper determination of probable cause," directed the government to provide Figueroa with "an unredacted copy of Jackson's training records" (see id. at 28:12-14, 29:4-5), and afforded Figueroa "leave to file for reconsideration [of the denial of his motion for summary judgment] on the strict condition that such a motion [be] limited to challenges of the training records so produced" (see id. at 29:5-11 (emphasis in original)).

On October 21, 2015, the government filed a "Declaration of DEA Task Force Agent (Reserve) Kevin O'Malley Re: Training Records and Certification of Jackson," attaching thereto certifications and training records, showing, inter alia, Jackson has been "certified in the detection of marijuana, cocaine, heroin and methamphetamine" on four occasions by the California Narcotic Canine Association ("CNCA") and on one occasion by the Peace Officers' Standards and Training ("POST").  (See O'Malley Decl., filed October 21, 2015, ¶ 8, Ex. B.)

On December 22, 2015, the Court granted the government's motion for leave to file a motion for reconsideration, and, consistent with the scope of leave afforded Figueroa, limited the motion to the issue of the adequacy of Jackson's training.

**DISCUSSION**

Where, as here, the government initiates a civil forfeiture action against currency, based on an allegation that the currency constitutes the proceeds of or is traceable to an exchange for a controlled substance, the government has two separate burdens of proof. First, "the government [must] show probable cause to institute [the] forfeiture action," by demonstrating that, at the time it filed the complaint, it had "reasonable grounds to believe that the property was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion," such showing being based "only . . . upon information gathered before the complaint was filed."  See United States v. $493,850, 518 F.3d 1159, 1169 (9th Cir. 2008) (internal quotation and citation omitted). Second, "the government must prove, by a preponderance of the evidence, that [the] property is subject to forfeiture," and, in so doing, "may use evidence gathered after the

4

filing of [the] complaint." See id. at 1170 (internal quotation and citation omitted).

As set forth above, both parties seek reconsideration of Judge Conti's order denying their cross-motions for summary judgment on the issue of probable cause. As further set forth above, the separate orders by which Figueroa and the government were afforded leave to file their respective motions for reconsideration limited any such reconsideration to the issue of the adequacy of the subject dog's training.

In light of such limitation, the Court, before addressing the issue of Jackson's training, first notes that each moving party also seeks reconsideration of Judge Conti's finding that a triable issue exists as to whether Jackson was signaled, or cued, in connection with his alerting to the defendant currency. Specifically, each party has offered new evidence pertaining to the circumstances surrounding that particular alert, and argues based thereon that Jackson was or was not cued by his handler and/or by a Special Agent who had earlier placed the currency in the box to which Jackson alerted. The Court has not, however, considered herein said evidence, or the arguments based thereon, as such issue is outside the scope of the prior orders affording the parties leave to file motions for reconsideration.

Accordingly, the Court turns to the question of whether the adequacy of Jackson's training can be summarily resolved.

**A. Figueroa's Motion for Reconsideration**

"[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert," see Florida v. Harris, 133 S. Ct. 1050, 1057 (2013), and, consequently, "[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search," see id. (noting party "may contest the adequacy of a certification or training program" by, for

//
//
//

example, showing that "its standards are too lax or its methods faulty").[3]

Figueroa argues he is entitled to summary judgment, relying on a declaration by Lawrence J. Myers, DMV, MS, PhD ("Dr. Myers"), offered as "an expert in sensory function and behavior of the dog." (See Myers Decl., filed June 12, 2015, at 1:4.) In his declaration, Dr. Myers cites a 1907 research paper that, as described by Dr. Myers, found "people can and do unconsciously communicate information to others by subtle, minute movements and that some animals can perceive these unconscious movements." (See Myers Decl., filed November 23, 2015, at 3:23-25.) According to Dr. Myers, such "effect has been demonstrated repeatedly in scientific literature," including in a 2011 study. (See id. at 3:28 - 4:7.) Specifically, the 2011 study, as described by Dr. Myers, found "suspicion by a handler that an item is the target of the search and resultant behavior [by the handler] has been shown to cause dogs to frequently false alert on items." (See id. at 2:11-14.) In Dr. Myers' opinion, in order for a certification to be considered adequate, a dog must be trained and tested using "double blind procedures," meaning that "both the handler and the observer are unaware of where an item has been placed and whether the dog should alert to the item." (See id. at 6:15-21.)[4]

Figueroa's motion for reconsideration is, in essence, premised on the theory that alerts by dogs that have not been trained and tested using double blind procedures are inherently unreliable. As set forth below, however, Figueroa has not made a sufficient showing to support a finding that Jackson's training, and, consequently, Jackson's certification, are, as a matter of law, inadequate.

In particular, the evidence offered by the government in opposition establishes a

---

[3] Additionally, even where the government establishes that the subject dog is "generally reliable," the "circumstances surrounding a particular alert may undermine the case for probable cause," such as where "the officer cued the dog (consciously or not)." See id. at 1057-58. Here, as discussed above, Judge Conti found a triable issue of fact exists with respect to the circumstances surrounding the particular alert and whether Jackson was cued.

[4] By contrast, in a "single blind" test, the "handler and dog do not know where or if anything is placed, but an observer does." (See id. at 6:13-14.)

triable issue of fact exists.[5]  Specifically, the government has submitted a declaration by Mark Raspoli ("Raspoli"), the individual who certified Jackson on the above-referenced four occasions; Raspoli states he followed "the CNCA certification process," which entails "single blind test[ing]."  (See Raspoli Decl. ¶¶ 2, 5.)[6]  According to Raspoli, CNCA certification standards are "modeled on what the Scientific Working Group on Dog and Orthoganal Detector Guidelines ('SWGDOG') has established as best practices."[7]  (See Raspoli Decl. ¶ 4).  In light of such evidence, and given the absence of a citation to any authority holding a dog's alert cannot be trusted unless the dog has been trained and tested using double blind procedures, the Court finds a trier of fact reasonably could conclude that CNCA's certification process is based on adequate methodology.[8]

---

[5] The Court notes that, had the government not submitted its response to Figueroa's motion, Figueroa would not even have met his initial burden, as he failed to submit with his moving papers any evidence to show that the certifying agencies did not employ double blind procedures, nor could he show the government lacked evidence to support the reliability of Jackson's certification.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000) (holding party without burden of proof at trial meets initial burden on summary judgment by "produc[ing] evidence negating an essential element of the nonmoving party's case" or, alternatively, by showing, based on the nonmoving party's responses to discovery requests, "there is an absence of evidence to support the nonmoving party's case") (internal quotation and citation omitted).

[6] Additionally, the government has submitted evidence showing POST, the other entity that certified Jackson, also used single blind testing.  (See Fleck Decl. ¶ 16.)

[7] SWGDOG is "a partnership of local, state, federal and international agencies including law enforcement and first responders" that "[e]stablish[es] consensus based best practices for the use of detection teams" (see Burch Decl., filed January 8, 2016, Ex. 3 at 3), and "[p]rovid[es] recommended guidelines for training, certification and documentation pertaining to narcotic detector canines" (see id. Ex. C at 6).

[8] With his reply, Figueroa has offered a copy of a document titled "SWGDOG SC2 - General Guidelines," which document Figueroa obtained from SWGDOG's website (see Burch Decl., filed December 18, 2015, ¶ 4) and which he interprets as "indicat[ing] dog teams must be certified, tested, or at least trained in double blind scenarios to be considered reliable" (see Claimant's Reply at 5:12-14).  Ordinarily, exhibits should not be submitted in the first instance with a reply, and the government has objected to the document on such grounds.  In any event, the Court's consideration of Figueroa's additional evidence does not alter the above findings.  To the extent such document is offered to show Raspoli's understanding of SWGDOG's guidelines is incorrect, the Court, having reviewed the exhibit, cannot make such a finding as a matter of law, particularly given the government's response thereto, with which it has submitted a declaration of Terry Fleck, a "certifying official" for SWGDOG who "participated in the formulation of the SWGDOG guidelines" (see Fleck Decl. ¶ 1); Fleck avers that "[a]lthough double-blind testing is allowed, the SWGDOG guidelines do not require it" (see id. ¶ 8), and that "the

1   Accordingly, Figueroa's motion for reconsideration will be denied.

2   **B. Government's Motion for Reconsideration**

3   As discussed above, the government can establish general reliability by showing the dog's "satisfactory performance in a certification or training program." See Harris, 133 S. Ct. at 1057.  As further discussed above, where the government makes such showing, "the dog's alert provides probable cause to search," unless the claimant offers evidence to support a finding that the dog is not generally reliable or, alternatively, that "circumstances surrounding the particular alert . . . undermine the case for probable cause." See id. at 1057-58.  Here, as noted, Judge Conti has found a triable issue exists as to the particular alert.  Consequently, the sole issue the Court considers herein is whether the government has shown, as a matter of law, that Jackson is generally reliable. See Fed. R. Civ. P. 56(g) (providing court may "enter an order stating any material fact . . . that is not genuinely in dispute and treating that fact as established in the case").

In that regard, the government relies on Jackson's training records, which records show that, on five separate occasions, he has been certified in the detection of marijuana, cocaine, heroin and methamphetamine.  (See O'Malley Decl., filed October 21, 2015, ¶ 8, Ex. B.)  It is undisputed, however, that the training Jackson received did not include double blind testing, and, in support of his opposition, Figueroa has submitted the declaration of an expert in whose opinion a dog is not reliable unless it has been tested and trained using double blind procedures.  Under such circumstances, a triable issue of fact exists as to whether Jackson can be considered generally reliable.

Accordingly, the government's motion for reconsideration will be denied.

//
//
//
//

---

industry standard throughout the United States is to use single-blind testing in the certification process" (see id. ¶ 2).

8

**CONCLUSION**

For the reasons stated above, the parties' respective motions for reconsideration are hereby DENIED.

**IT IS SO ORDERED.**

Dated:  April 21, 2016

MAXINE M. CHESNEY
United States District Judge